## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 10-3093-022 JB

JAIME PEREZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Appeal of Order Denying Conditions of Release, filed November 23, 2010 (Doc. 151); and (ii) the Defendant's Notice of Appeal on the Order of Detention, filed November 24, 2010 (Doc. 157). The Court held an evidentiary hearing on December 8, 2010. The primary issue is whether the Court should review the Order of the Honorable Carmen E. Garza, United States Magistrate Judge for the District of New Mexico, denying Defendant Jaime Perez conditions of release. The Court concludes that the United States of America has proved, by a preponderance of the evidence, that Perez is a flight risk and the Court therefore affirms Judge Garza's Order denying Perez conditions of release.

## FACTUAL BACKGROUND

Perez' mother, Christine Gardea, resides in El Paso, Texas. Perez has resided with his mother for several years. Perez' brother resides in Santa Teresa, New Mexico. Perez is a United States citizen. He has two young children with his girlfriend, and his children are United States citizens. Perez also has family in Mexico, including a grand mother and uncles.

The United States Pretrial Services ("PTS") report shows that Perez' criminal history includes a number of convictions. On May 2, 1999, Perez was convicted of being a minor in

possession of alcohol, for which he received a time served sentence.  On December 20, 1999, Perez was convicted of two counts of burglary of a vehicle and one count of criminal mischief, for which he received a sentence of 180 days confinement followed by 15 months of probation.  His probation was revoked on November 2, 2000, and he was sentenced to 120 days additional confinement.  On June 9, 2000, Perez was convicted of theft under $50.00, for which he received a time served sentence.  On November 2, 2000, he was convicted of misdemeanor possession of marijuana, for which he was sentenced to 10 days confinement.  On April 2, 2007, Perez was convicted of failure to identify, for which he was fined and required to pay court costs.  In addition to these five convictions, and the probation violation, Perez also appears to have an outstanding warrant for speeding.

Perez has not has not had legitimate employment in the United States for approximately ten years and Perez asserted that he gambles professionally in Mexico. Additionally, the United States proffered the results of a six month crossing history for Perez, as researched by a United States Border Patrol, which indicated that between May 23, 2010, and November 16, 2010, Perez re-entered the United States from Mexico thirty-six times.

At the December 8, 2010 hearing, Drug Enforcement Agency ("DEA") agent Jerry Smith testified that the indictment against Perez and his co-conspirators is the result of a lengthy investigation which included over four months of court-authorized Title III wiretap interception of six different telephones, and video surveillance of three different residences.  Smith testified that Perez was repeatedly intercepted in conversations with co-Defendant Carmen Carrasco on her wiretapped telephone.  Agents reported that Carrasco stated she receives cocaine on Tuesdays and Fridays.  On multiple occasions -- most Tuesdays and Fridays during three months of observation -- Perez and Carrasco arranged for Perez to go to Carrasco's residence.  Smith further testified that,

using video surveillance, agents observed multiple occurrences at Carrasco's residence when Perez would arrive and either exit his vehicle and walk to the front of the residence, or remain in his vehicle while Carrasco would walk to the window of his vehicle and reach inside.  These meetings were brief, and Smith testified that the meetings are consistent with other hand-to-hand drug deals that the he has witnessed in the past.  Smith further testified that Perez was a minor participant in the overall investigation.  Smith also testified that, after Perez was arrested and Mirandized, Perez stated that he provided Carrasco with marijuana.  Smith did not observe any interaction between Perez and co-Defendant Pablo Fuentes, the primary subject of the investigation.  Co-Defendant Jesus De La Torre, who lives with C. Carrasco, after being arrested and Mirandized stated that Perez delivered marijuana and smaller amounts of cocaine to C. Carrasco.

## PROCEDURAL BACKGROUND

On November 10, 2010, the Grand Jury returned a seven-count Indictment charging twenty-three people, including Perez, with, among other things, conspiracy to possess with intent to distribute five kilograms and more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1), and (b)(1)(A). On November 16, 2010, seventeen arrest warrants and seven search warrants were executed.  Perez is charged in Count 1: conspiracy to possess with intent to distribute five kilograms or more or cocaine.  Perez was arrested on November 16, 2010, as he re-entered the United States from Ciudad Juarez, Mexico.  On November 17, 2010, Perez had his initial appearance before Judge Garza, where the United States made an oral motion for a detention hearing, and Judge Garza granted the United States motion to continue the detention hearing.  On November 19, 2010, Perez was arraigned and entered a plea of not guilty.  On November 19, 2010, and Judge Garza also held a detention hearing, and he denied Perez conditions of release.  Judge Garza executed a Detention Order on November 22, 2010.  See Doc. 128.

In preparation for the detention hearing, PTS prepared a report regarding Perez.  Pretrial Services stated that, in his interview, Perez stated that he did not possess a passport; however, he traveled to Mexico in 2009.  JoAnn Lopez, Perez' girlfriend and mother of Perez' children, has agreed to serve as a third-party custodian for him.  PTS interviewed Lopez and found her to be a suitable third-party custodian.

Perez' first counsel, Mario Carreon, subsequently filed Perez' Appeal of Order Denying Conditions of Release.  See Doc. 151.  Perez appeals, pursuant to 18 U.S.C. § 3145(b), the order denying his conditions of release.  Perez requests that the Court review the order of detention that Judge Garza executed, and allow him to continue living with his mother, Gardea, in El Paso.  Perez states that he has lived with Gardea for several years.  Perez represents that PTS commenced an interview with Gardea, but it has not made any findings about her suitability as a third-party custodian.  Perez requests that he live with Gardea and that Lopez be assigned as his third-party custodian.

Perez' second counsel, Steven Almanza, filed Perez' Notice of Appeal on the Order of Detention, in which Perez incorporates for reference the Defendant's Appeal of Order Denying Conditions of Release and realleges its contentions in support of this motion.  Perez requests that the Court set the issue for a hearing, permit him to present witnesses and any supporting evidence, and present his argument in furtherance of the contention that he holds substantial community connections and is not a flight risk, all pursuant to his request for release pending trial.

In advance of the hearing that Perez requests and the Court scheduled for December 8, 2010, the United States on December 7, 2010, filed it's the United States' Response to Defendant's Appeal of Pretrial Detention.  See Doc. 197.  Specifically, the United States responds to Perez' Appeal on the Order of Detention, see Doc. 157 (incorporating by reference Doc. 151).  The United States asks

the Court to uphold the November 19, 2010 pretrial order of detention that Judge Garza entered. The United States submits its brief in support of detention, arguing that Perez is a flight risk and danger to the community, and that there are no conditions or combination of conditions that can reasonably assure the safety of the community and his appearance for trial.

At the December 8, 2010 hearing, Smith testified about the evidence DEA agents gathered during their investigation that implicated Perez.  Perez stipulated that he had crossed the border between the United States and Mexico thirty-six times between May 23, 2010, and November 16, 2010.  He further conceded that he had not initially be forthcoming with about the recency and frequency of his travels to Mexico.

## STANDARD OF REVIEW BY THE DISTRICT COURT

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release."  United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992).  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo).

## STATUTORY PRESUMPTION AGAINST RELEASE

Pursuant to the Bail Reform Act, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving

dangerousness by clear and convincing evidence.  18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616.  A statutory presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if" a court "finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."  18 U.S.C. § 3142(e)(3).  See United States v. Villapudus-Quintoro, No. 08-2308, 2009 WL 141931, at *1 (10th Cir. Jan. 22, 2009)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).

> Under section 3142(e), upon a finding of probable cause that the defendant has committed a federal drug offense carrying a maximum prison term of ten years or more, a rebuttable presumption arises that no conditions of release will assure defendant's appearance and the safety of the community.  Once the presumption is invoked, the burden of production shifts to the defendant.  However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.  The defendant's burden of production is not heavy, but some evidence must be produced.  Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991).

To determine whether the defendant has rebutted the presumption, the court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release.  See 18 U.S.C. § 3142(g).  Should the defendant satisfy his burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight

or by clear-and-convincing evidence that the defendant presents a danger to the community.  See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.").  Notably, however, even if the defendant meets his burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355 (citation omitted).  Accord United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).  "The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f).

## ANALYSIS

The Court concludes that Perez is a flight risk, and must be detained pending trial.  The statutory presumption is present in this case, because probable cause supports finding that Perez conspired to possess with intent to distribute five kilograms and more of cocaine.  Pursuant to the 18 U.S.C. § 3142(g) factors, the Court finds that, based on the quantity of narcotics involved and the strength of the United States case, Perez' criminal history and ties to Mexico, a preponderance of the evidence supports finding that Perez is a flight risk.  As such, there are no conditions, nor a combination of conditions, that will adequately ensure the safety of the community and the presence of the defendant as required.  See 18 U.S.C. § 3142(g).  Accordingly, the Court will order Perez detained pending trial.

## I.    THE STATUTORY PRESUMPTION IS PRESENT.

The Grand Jury has found probable cause to believe that Perez conspired to possess with intent to distribute five kilograms and more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1), and (b)(1)(a), in violation of 21 U.S.C. § 846.  "[T]he Tenth Circuit has explained that '[t]he grand jury

indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more.'" United States v. Moreau, No. 07-cr-0388-JB, 2007 WL 2219412, at *4 (D.N.M. May 7, 2007)(quoting United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993)). See United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010)("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which [s]he is charged." (citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985)). "Thus, when the government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention." United States v. Stone, 608 F.3d at 945. See United States v. Cruz, 23 F.3d 395, at *1 (1st Cir. 1994)("The grand jury indictment . . . gave the district court probable cause to believe that appellant had committed a crime of violence . . . . This, in turn, triggered the rebuttable presumption contained in § 3142(e)." (citing United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(per curiam))); United States v. Silva, 7 F.3d at 1046; United States v. v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990)("A grand jury indictment provides the probable cause required by the statute to trigger the presumption." (citing United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir. 1985))); United States v. Williams, 903 F.2d 844, at *1 (D.C. Cir. 1990)("Courts of appeals, however, have uniformly held that a judicial officer may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e)." (citing United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Suppa, 799 F.2d 115, 118-19 (3d Cir. 1986); United States v. Dominguez, 783 F.2d 702, 706 n.7 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-79 (11th Cir. 1985); United States v. Contreras, 776 F.2d 51 (2d Cir. 1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985); United States v. Mosuro, 648 F. Supp. 316, 318 (D.D.C. 1986))). Moreover, the United States presented evidence that Perez delivered

cocaine and marijuana to Carrasco.  Because probable cause exists to believe Perez violated the statutory provisions -- which carries a ten year minimum sentence under 21 U.S.C. § 841(b)(1)(A)(viii) -- a presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(stating this presumption applies to Controlled Substances Act violations "for which a maximum term of imprisonment of ten years or more is prescribed").

## II.     **THE COURT CONCLUDES THAT PEREZ IS A FLIGHT RISK.**

The Court concludes that Perez must be detained pending trial.  The United States argues that Perez must be detained pending trial because he is, by a preponderance of the evidence, a flight-risk, and, by clear-and-convincing evidence, a danger to the community.  The United States contends that it presents strong evidence supporting a conviction under 21 U.S.C. § 841(a)(1), (b)(1)(A), which would subject Perez to a lengthy term of incarceration.  As such, the United States contends, no condition or combination of conditions will adequately deter Perez' flight and ensure the community's safety.  The United States further contends that Perez has been charged in a large-scale cocaine conspiracy, and that the temptation to continue engaging in drug activity makes Perez a danger to the community.

Perez responds that he has strong ties to the community, with his mother residing in El Paso and brother residing in Santa Teresa.  He asserts that he has two young children with his girlfriend, and his children are United States citizens.  Perez also has family in Mexico, including a grand mother and uncles.

The Court concludes that Perez meets his burden of production and rebuts the statutory presumption favoring detention.  See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced.").  While Perez has

rebutted the presumption, it "remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted). The Court further concludes that the United States has shown, by a preponderance of the evidence, that Perez presents a risk of flight. While participating in drug sales is harmful to the community, the Court is not ready to say that the United States has shown, by clear-and-convincing evidence, that Perez presents a danger to the community. See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."). The Court also concludes that no conditions that Perez proposes or that the Court knows to be available will adequately deter Perez' flight. Because the Court "finds that no condition or combination of conditions will reasonably assure the appearance of [Perez] as required and the safety of any other person and the community, [the Court] shall order the detention of the [Perez] before trial." 18 U.S.C. § 3142(e)(1).

**A.   PEREZ IS A FLIGHT RISK.**

The Court finds, by the preponderance of the evidence, that Perez is a flight risk. He faces charges that carry substantial sentences. The United States presents weighty evidence of Perez' guilt. Perez travels frequently to Mexico, where is earns money gambling. He has not been legitimately employed for at least ten years. Consequently, the Court concludes that if it were to release Perez pending trial, it is more likely than not would that he would flee.

**1.   The Nature and Circumstances of the Crime Charged Demonstrate Perez Is a Flight Risk.**

The crime with which Perez is charged carries substantial penalties. Perez is charged with conspiring to traffic cocaine, which carries a ten-year statutory minimum term of imprisonment, and the United States estimates Perez' Sentencing Guideline range upon conviction at trial will be

approximately 135 to 168 months imprisonment.  See 21 U.S.C. § 841(a)(1),(b)(1)(A)(viii).  This

Court has previously noted that "The rebuttable presumption in drug-trafficking cases is statutory,

and arises out of Congress' concern that individuals involved in drug trafficking often have foreign

contacts and the ability to leave the country, and incentives to remain active in the drug trade."

United States v. Disher, 650 F. Supp. 2d 1131, 1136 (D.N.M. 2009)(Browning, J.)(citing United

States v. Moreno, 30 F.3d 127, at *2 (1st Cir. 1994).  This concern regarding drug-trafficking is

further illuminated by its inclusion in 18 U.S.C. § 3142(g) as a particular factor for consideration

in making a determination regarding detention.  Perez has been charged in a large-scale cocaine

conspiracy and faces a substantial sentence.  The Court therefore finds that this factor counsels in

favor of detaining Perez pending trial.

### 2. The Weight of the United States' Evidence Against Perez Shows He Is a Flight Risk.

The weight of the United States' evidence against Perez favors detaining him before trial.

"[T]he weight of the evidence offered in support of [the charge against Perez] is significant," giving

him ample reason to flee if he is released pending trial.  United States v. Cisneros, 328 F.3d at 618

(recognizing that the United States "need not offer all of its evidence" at the detention stage of the

criminal proceeding).  The indictment against Perez and his co-conspirators is the result of a lengthy

investigation which included over four months of court-authorized Title III wiretap interception of

six different telephones, and video surveillance of three different residences.  Perez notes that his

name appears only once in the nineteen page Indictment, which he contends suggests that he had

a much smaller role than his co-Defendants.  Moreover, Smith testified at the hearing that Perez was

a minor participant in the DEA's investigation.  Although Perez may have been a minor participant

in the conspiracy, the United States presents weighty evidence against him.  Perez was repeatedly

intercepted in conversations with co-Defendant Carrasco on her wiretapped telephone.  On multiple occasions, Perez and Carrasco arranged for Perez to go to Carrasco's residence.  Using video surveillance, agents observed multiple occurrences at Carrasco's residence when Perez would arrive and either exit his vehicle and walk to the front of the residence, or remain in his vehicle while Carrasco would walk to the window and reach into the vehicle.  These meetings were brief, and Agent Smith testified that the meetings are consistent with other hand-to-hand drug deals that the agent has witnessed in the past.  Perez admitted to supplying marijuana to Carrasco in a post-Miranda statement at the time of his arrest.  De La Torre, who lives with Carrasco, told investigators that Perez delivered marijuana and smaller amounts of cocaine to Carrasco.  The proffered evidence demonstrates that the United States' case against Perez is formidable, making Perez' conviction and, in turn, his imprisonment a very real possibility for him.  The Court thus finds that this factor weighs in favor of pretrial detention.

### 3.  Perez' History and Characteristics Evince That He Is a Flight Risk.

Perez' history and characteristics offer further support for finding that he is a flight risk. Some of his characteristics demonstrate ties to the community.  Perez is a United States citizen.  He has two children with his girlfriend, Lopez, and his children are United States citizens, although Perez did not live with them at the time of his arrest and any support Perez provided to his children were the proceeds of gambling in Mexico.  His mother, Gardea, with whom he lives, resides in El Paso, and his brother resides in Santa Teresa, New Mexico.  Perez contends that he played at most a minimal role in the matter, and that his last conviction was for a misdemeanor in 2007.

On the other hand, Perez has not shown himself to be otherwise law abiding.  Over the course of the past eleven years, Perez appears to have been arrested seven times, resulting in five convictions and one probation violation.  The most recent conviction is for "failing to identify"

which indicates Perez refused to cooperate with a law enforcement officer's request for identification. Additionally, Perez has an outstanding warrant for a traffic violation. While Perez' individual offenses may be minor, and some dated, they demonstrate a pattern and history of Perez' tendency to ignore the laws of his community and his inconsistent ability to follow lawful orders, including those imposed by a court.

Perez concedes that he frequently travels to Mexico. According to information compiled by the Border Patrol, Perez has traveled to Mexico thirty-six times in the past six months. Perez initially told PTS, however, that he had not traveled to Mexico since 2009. Perez was arrested on the present charges upon reentering the United States from Mexico on November 16, 2010. The Court is troubled by Perez' failure to be forthcoming to PTS about the extent of his travel to Mexico. Moreover, Perez earns money gambling in Mexico, and is not legitimately employed in the United States. He does not rent or own his own residence, and lives with his mother. What's more Perez also has family in Mexico. See United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003)(noting a defendant's "close family in Mexico . . . and that in the past [the defendant] has traveled to Juarez with a sister and other family members" weighed in favor of detention).

The Court is also unconvinced of the viability of the arrangement Perez proposes. Perez asks to be released and allowed to live with Gardea and have Lopez as his third-party custodian. Perez contends that Lopez will have daily contact with him. Perez' mother, with whom he has lived during the alleged events with which he is charge, has apparently not been willing or able to act as a check on him, and the Court is unconvinced that daily meetings with Lopez would be effective an effective control.[1]

_____

[1] The Court's order is without prejudice to Perez proposing conditions of release that better address the Court's and the United States' concerns, and give comfort to probation if they can be

In sum, by a preponderance of the evidence, Perez is a flight risk given the serious penalties he faces, his criminal record, the strength of the United States' case, and Perez' weak ties to the community and his ties to Mexico.  On balance, Perez' ties to the community appear insufficient to prevent Perez' flight.  In light of the severity of the sentence he is facing and the strength of the United States evidence, along with his ties to Mexico, Perez has significant reason to abscond and avoid incarceration.

> **B.      THE COURT DOES NOT FIND CLEAR-AND-CONVINCING EVIDENCE PEREZ IS A DANGER TO THE COMMUNITY.**

The Court finds evidence that Perez is a danger to the community, but the Court is not ready to say the evidence is clear-and-convincing.  Because the United States has presented probable cause supporting Perez' federal charges, the statutory presumption that Perez poses a danger to the community is triggered.  Even though Perez has rebutted that presumption, the presumption remains a factor for this Court to consider in making its ultimate determination regarding detention.  See United States v. Stricklin, 932 F.2d at 1355 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.").  Perez is charged with conspiring to traffic cocaine, which is a serious crime which "threatens to cause grave harm to society."  Harmelin v. Michigan, 501 U.S. 957, 1002 (1991)(stating that the "possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare" of the United States).  Thus, beyond the presumption, the federal charges provide reason to deem Perez a danger to the community.  See United States v. Pina-Aboite, 97 F. App'x at 836 (recognizing that 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug

---

met.

-14-

trafficking constitutes a danger to the community" (citing <u>United States v. Cook</u>, 880 F.2d 1158, 1161 (10th Cir.1989)).  Perez appears, however, to have played a smaller role than a number of his co-Defendants, and there is some evidence that he supplied Carrasco with marijuana, and not cocaine.  Consequently, the Court does not find, on the record before it, clear-and-convincing evidence that Perez presents a danger to the community, and relies instead on Perez being a flight risk in ordering his pretrial detention.

**IT IS ORDERED** that: (i) the Defendant's Appeal of Order Denying Conditions of Release, filed November 23, 2010 (Doc. 151), is denied; (ii) the Court grants Defendant's Notice of Appeal on the Order of Detention, filed November 24, 2010 (Doc. 157), requesting a hearing on this issue; and (iii) the Court affirms the Honorable Carmen E. Garza's Order denying Defendant Jaime Perez conditions of release.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Sarah M. Davenport
Elizabeth M. Martinez
  Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Las Cruces, New Mexico

      *Attorneys for the Plaintiff*

Steven L. Almanza
The Law Office of Steven L. Almanza
Las Cruces, New Mexico

      *Attorneys for the Defendant*