**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 10-3093-022 JB

JAIME PEREZ,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Second Notice of Appeal on the Order of Detention, filed March 18, 2011 (Doc. 332)("Motion"). The Court held an evidentiary hearing on April 7, 2011. The primary issue is whether the Court should reconsider its Memorandum Opinion and Order, filed December 29, 2010 (Doc. 229)("MOO"), which affirmed the order of Honorable Carmen E. Garza, United States Magistrate Judge for the District of New Mexico, denying Defendant Jaime Perez conditions of release. The Court grants Perez' request for a hearing, but denies his request that the Court grant him conditions of release.

**FACTUAL BACKGROUND**

Perez' mother, Christine Gardea, resides in El Paso, Texas. Perez has resided with his mother for several years. Perez' brother resides in Santa Teresa, New Mexico. Perez is a United States citizen. He has two young children with his common-law wife, JoAnn Lopez, and his children are United States citizens. Perez also has family in Mexico, including a grandmother and uncles.

The United States Pretrial Services ("PTS") report shows that Perez' criminal history includes a number of convictions. On May 2, 1999, Perez was convicted of being a minor in

possession of alcohol, for which he received a time-served sentence. On December 20, 1999, Perez was convicted of two counts of burglary of a vehicle and one count of criminal mischief, for which he received a sentence of 180 days confinement followed by fifteen months of probation. His probation was revoked on November 2, 2000, and he was sentenced to 120 days additional confinement. On June 9, 2000, Perez was convicted of theft under $50.00, for which he received a time-served sentence. On November 2, 2000, he was convicted of misdemeanor possession of marijuana, for which he was sentenced to ten days confinement. On April 2, 2007, Perez was convicted of failure to identify, for which he was fined and required to pay court costs. In addition to these five convictions, and the probation violation, Perez also appears to have an outstanding warrant for speeding.

Perez has not had legitimate employment in the United States for approximately ten years, and Perez asserts that he gambles professionally in Mexico. Additionally, the United States proffered the results of a six-month crossing history for Perez, as researched by the United States Border Patrol, which indicated that, between May 23, 2010, and November 16, 2010, Perez re-entered the United States from Mexico thirty-six times.

At the December 8, 2010 hearing, Drug Enforcement Agency ("DEA") agent Jerry Smith testified that the indictment against Perez and his co-conspirators is the result of a lengthy investigation, which included over four months of court-authorized Title III wiretap interception of six different telephones and video surveillance of three different residences. Smith testified that Perez was repeatedly intercepted in conversations with co-Defendant Carmen Carrasco on her wiretapped telephone. Agents reported that Carrasco stated she receives cocaine on Tuesdays and Fridays. On multiple occasions -- most Tuesdays and Fridays during three months of observation -- Perez and Carrasco arranged for Perez to go to Carrasco's residence. Smith further testified that,

using video surveillance, agents observed multiple occurrences at Carrasco's residence when Perez would arrive and either exit his vehicle and walk to the front of the residence, or remain in his vehicle while Carrasco would walk to the window of his vehicle and reach inside. These meetings were brief, and Smith testified that the meetings are consistent with other hand-to-hand drug deals that he has witnessed. Smith further testified that Perez was a minor participant in the overall investigation. Smith also testified that, after Perez was arrested and read his Miranda[1] rights, Perez stated that he provided Carrasco with marijuana. Smith did not observe any interaction between Perez and co-Defendant Pablo Fuentes, the primary subject of the investigation. Co-Defendant Jesus De La Torre, who lives with C. Carrasco, after being arrested and read his Miranda rights, stated that Perez delivered marijuana and smaller amounts of cocaine to C. Carrasco.

## PROCEDURAL BACKGROUND

On November 10, 2010, the Grand Jury returned a seven-count Indictment charging twenty-three people, including Perez, with, among other things, conspiracy to possess with intent to distribute five kilograms and more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1), and (b)(1)(A). On November 16, 2010, seventeen arrest warrants and seven search warrants were executed. Perez is charged in Count 1: conspiracy to possess with intent to distribute five kilograms or more or cocaine. Perez was arrested on November 16, 2010, as he re-entered the United States from Ciudad Juarez, Mexico. On November 17, 2010, Perez had his initial appearance before Judge Garza, where the United States made an oral motion for a detention hearing, and Judge Garza granted the United States' motion. On November 19, 2010, Perez was arraigned and entered a plea of not guilty. Also on November 19, 2010, Judge Garza held a detention hearing, and she denied Perez conditions of

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

release. Judge Garza executed a Detention Order on November 22, 2010. See Doc. 128.

In preparation for the detention hearing, PTS prepared a report regarding Perez. PTS reported that, in his interview, Perez stated that he did not possess a passport; however, he traveled to Mexico in 2009.[2] Lopez, Perez' common-law wife and mother of Perez' children, has agreed to serve as a third-party custodian for him. PTS interviewed Lopez and found her to be a suitable third-party custodian.

On November 23, 2010, Perez' first counsel, Mario Carreon, filed Perez' Appeal of Order Denying Conditions of Release. See Doc. 151. Perez appealed, pursuant to 18 U.S.C. § 3145(b), Judge Garza's order denying him conditions of release. Perez requested that the Court review the order of detention that Judge Garza executed and allow him to continue living with his mother, Gardea, in El Paso. Perez stated that he has lived with Gardea for several years. Perez represented that PTS had commenced an interview with Gardea, but had not yet made any findings about her suitability as a third-party custodian. Perez requested that he live with Gardea and that Lopez be assigned as his third-party custodian.

On November 24, 2010, Perez' second counsel, Steven Almanza, filed Perez' Notice of Appeal on the Order of Detention, see Doc. 157, in which Perez incorporated by reference the Defendant's Appeal of Order Denying Conditions of Release and realleged its contentions in support of this motion. Perez requested that the Court set the issue for a hearing, permit him to present

---

[2] After the events of September 11, 2001, Congress enacted the Intelligence Reform and Terrorism Prevention Act of 2004, Pub.L. No. 108–458, 118 Stat. 3638 (Dec. 17, 2004). Section 7209(b)(1) of that Act required the State Department and the Department of Homeland Security to develop a plan requiring anyone entering into the United States, including citizens returning from Mexico, to present a valid passport. The State Department issued the Western Hemisphere Travel Initiative implementing this policy, 8 CFR Pts. 212, 235, which implemented this requirement for land- and sea-based travelers on June 1, 2009, see http://www.dhs.gov/files /programs/gc_1200693579776.shtm (last visited May 12, 2011).

witnesses and any supporting evidence, and present his argument in furtherance of the contention that he holds substantial community connections and is not a flight risk, all pursuant to his request for release pending trial.

The Court held a hearing on December 8, 2010. At the hearing, Smith testified about the evidence DEA agents gathered during their investigation that implicated Perez. Perez stipulated that he had crossed the border between the United States and Mexico thirty-six times between May 23, 2010, and November 16, 2010. He further conceded that he had not initially been forthcoming with PTS about the recency and frequency of his travels to Mexico.

On December 29, 2010, the Court entered its MOO, denying Perez conditions of release. See Doc. 229. The Court held that the United States had shown, by a preponderance of the evidence, that Perez is a flight risk. The Court further held that the United States had not shown, by clear-and-convincing evidence, that Perez was a danger to the community. The Court concluded that "there are no conditions, nor a combination of conditions, that will adequately ensure . . . the presence of the defendant as required." MOO at 7. The Court's MOO was "without prejudice to Perez proposing conditions of release that better address the Court's and the United States' concerns, and give comfort to probation if [the conditions] can be met." MOO at 13 n.1.

Perez now moves the Court to reconsider its MOO. He requests that "that the Court set this issue for a hearing, permit Defendant to present witnesses and any supporting evidence, and present his argument in furtherance of the contention that he holds substantial community connections and is not a flight risk, all in pursuant to his request for release pending trial." Motion at 9-10. Perez states that his mother has now been approved as a third party custodian, and his common-law wife has secured a position for him at Lowe's hardware store in El Paso if he is released.

On March 31, 2011, the United States filed its Response to the Defendant's Second Appeal

of Pretrial Detention. See Doc. 341 ("Response"). The United States opposes Perez' Motion, and "requests that the Court enter an order denying the motion without a hearing and upholding the December 8, 2010, denial of the defendant's original detention appeal." Response at 1. The United States contends that Perez' Motion is a motion to reconsider, which is disfavored, and that no new legal or factual developments warrant reconsideration of the Court's MOO, because there has been no change in the law and the only "new piece of information that the defendant appears to offer is that his mother has been approved as a third party custodian." Response at 2. The United States notes that the Court already discussed its concerns about the possibility of Perez' mother serving as a third-party custodian. See MOO at 13 ("Perez' mother, with whom he has lived during the alleged events with which he is charge, has apparently not been willing or able to act as a check on him . . . ."). The United States asserts: "The only purpose of the defendant's present motion is to have the Court review an issue that the Court has already addressed. As a result, the Court should deny the motion and refuse to reconsider issues it has already decided." Response at 3.

At the April 7, 2010 hearing, Mr. Almanza conceded that "many of the facts have not changed," but noted that Perez' mother has been approved as a third-party custodian and that Perez' "common-law wife, Ms. JoAnn Lopez, has secured employment for [Perez] at Lowe's in El Paso, Texas." Transcript of Hearing at 3:22-4:8 (taken April 7, 2011)(Almanza).[3] Mr. Almanza also stated that he had been unaware at the December 8, 2010 hearing that PTS had recommended Perez' release on conditions, so that when he filed his motion to reconsider, he thought that the Court did not know PTS' position when it refused to release Perez earlier. Mr. Almanza candidly acknowledged that Perez' mother did not "have a standard telephone line" at the time of the hearing,

[3] The Court's citations to the transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

but represented that it would not be "a huge complication" to obtain one. Tr. at 4:8-12 (Almanza). Perez is also working to obtain substance abuse treatment.

## STANDARD OF REVIEW BY THE DISTRICT COURT

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003). "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992). See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo).

## STATUTORY PRESUMPTION AGAINST RELEASE

Pursuant to the Bail Reform Act, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-convincing evidence. See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d at 616. A statutory presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if" a court "finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3). See United States v. Villapudus-Quintoro, No. 08-2308, 2009 WL 141931, at *1 (10th Cir. Jan. 22, 2009)(recognizing that 18 U.S.C. § 3142(e)

establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).

> Under section 3142(e), upon a finding of probable cause that the defendant has committed a federal drug offense carrying a maximum prison term of ten years or more, a rebuttable presumption arises that no conditions of release will assure defendant's appearance and the safety of the community. Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.

United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991).

To determine whether the defendant has rebutted the presumption, the court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release. See 18 U.S.C. § 3142(g). Should the defendant satisfy his burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community. See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."). Notably, however, even if the defendant meets his burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted). Accord United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). "The rules concerning the admissibility of

evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).

## ANALYSIS

The Court continues to conclude that Perez is a flight risk and will be detain him pending trial. The statutory presumption is present in this case, because probable cause supports finding that Perez conspired to possess with intent to distribute five kilograms and more of cocaine. While Perez has met his burden of production in response to the presumption, pursuant to the 18 U.S.C. § 3142(g) factors, the Court finds that, based on the quantity of narcotics involved and the strength of the United States' case, and on Perez' criminal history and ties to Mexico, a preponderance of the evidence supports finding that Perez is a flight risk. In light of Perez' circumstances, there are no conditions, nor a combination of conditions, that will adequately ensure the safety of the community and the presence of the defendant as required. See 18 U.S.C. § 3142(g). Accordingly, the Court will order Perez detained pending trial.

## I. THE STATUTORY PRESUMPTION IS PRESENT.

The Grand Jury has found probable cause to believe that Perez conspired to possess with intent to distribute five kilograms and more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1), and (b)(1)(a), in violation of 21 U.S.C. § 846. "[T]he Tenth Circuit has explained that '[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more.'" United States v. Moreau, No. 07-cr-0388-JB, 2007 WL 2219412, at *4 (D.N.M. May 7, 2007)(quoting United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993)). See United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010)("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which [s]he is charged." (citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir.

1985)). "Thus, when the government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention." United States v. Stone, 608 F.3d at 945. See United States v. Cruz, 23 F.3d 395, at *1 (1st Cir. 1994)("The grand jury indictment . . . gave the district court probable cause to believe that appellant had committed a crime of violence . . . . This, in turn, triggered the rebuttable presumption contained in § 3142(e)." (citing United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991)(per curiam))); United States v. Silva, 7 F.3d at 1046; United States v. v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990)("A grand jury indictment provides the probable cause required by the statute to trigger the presumption." (citing United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir. 1985))); United States v. Williams, 903 F.2d 844, at *1 (D.C. Cir. 1990)("Courts of appeals, however, have uniformly held that a judicial officer may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e)." (citing United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Suppa, 799 F.2d 115, 118-19 (3d Cir. 1986); United States v. Dominguez, 783 F.2d 702, 706 n.7 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-79 (11th Cir. 1985); United States v. Contreras, 776 F.2d 51 (2d Cir. 1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985); United States v. Mosuro, 648 F. Supp. 316, 318 (D.D.C. 1986))). Moreover, the United States presented evidence that Perez delivered cocaine and marijuana to Carrasco. Because probable cause exists to believe Perez violated the statutory provisions -- which carries a ten-year minimum sentence under 21 U.S.C. § 841(b)(1)(A)(viii) -- a presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(stating this presumption applies to Controlled Substances Act violations "for which a maximum term of imprisonment of ten years or more is prescribed").

## II. THE COURT CONCLUDES THAT PEREZ IS A FLIGHT RISK.

Perez has not convinced the Court to reverse its conclusion that he must be detained pending trial. The United States stands by its original brief in support of detaining Perez pending trial. The United States argues that Perez must be detained pending trial, because he is, by a preponderance of the evidence, a flight-risk, and, by clear-and-convincing evidence, a danger to the community. The United States contends that it presented strong evidence supporting a conviction under 21 U.S.C. § 841(a)(1), (b)(1)(A), which would subject Perez to a lengthy term of incarceration. As such, the United States contends, no condition or combination of conditions will adequately deter Perez' flight and ensure the community's safety. The United States further contends that Perez has been charged in a large-scale cocaine conspiracy and that the temptation to continue engaging in drug activity makes Perez a danger to the community.

Perez asserts that he is not a flight risk and that there are conditions that will reasonably assure his appearance at trial.

> Defendant argues an overemphasis of his criminal history (he is safety valve eligible), and that he holds no significant ties to Mexico. Further, Defendant has made good faith efforts to comply with the entirety of the fourteen (14) preconditions for release enumerated by USPTS, and that the strength of the evidence presented by the United States is merely at the standard to bring forth one count against him in a seven-count indictment among twenty-three named co-defendants.

Motion at 2-3. Perez contends that he has strong ties to the community, with his mother residing in El Paso and brother residing in Santa Teresa. He asserts that he has two young children with his common-law wife, all of whom reside in the United States. Perez notes that PTS has recommended release with conditions, and asserts that he has made good faith efforts to comply with those conditions by obtaining employment, seeking drug addiction counseling, and paying his traffic tickets in El Paso.

The Court continues to conclude that Perez meets his burden of production in response to the statutory presumption favoring detention. See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced."). While Perez has met his burden of production, the presumption "remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted). The Court further concludes that the United States has shown, by a preponderance of the evidence, that Perez presents a risk of flight. The Court is still not ready to say that the United States has shown, by clear-and-convincing evidence, that Perez is a danger to the community. While participating in drug sales is harmful to the community, Perez appears to have played a smaller role than a number of his co-Defendants, and there is some evidence that he supplied Carrasco with marijuana, and not cocaine. He may have been Carrasco's personal dealer, and not part of the broader conspiracy. See United States v. Mercedes, 254 F.3d at 436; United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government."). The Court also concludes that no conditions that Perez proposes or that the Court knows to be available will adequately deter Perez' flight. Because the Court "finds that no condition or combination of conditions will reasonably assure the appearance of [Perez] as required . . . , [the Court] shall order the detention of the [Perez] before trial." 18 U.S.C. § 3142(e)(1).

As the Court noted before, Perez faces charges that carry substantial sentences. The United States presents weighty evidence of Perez' guilt. Perez travels frequently to Mexico, where he earns money gambling. He has not been legitimately employed for at least ten years. While Perez has presented new considerations that add wrinkles to the Court's analysis, he has not convinced the Court that it can impose conditions that would assure his appearance at trial.

**A. THE NATURE AND CIRCUMSTANCES OF THE CRIME CHARGED DEMONSTRATE PEREZ IS A FLIGHT RISK.**

The crime with which Perez is charged carries substantial penalties. Perez is charged with conspiring to traffic cocaine, which carries a ten-year statutory minimum term of imprisonment, and the United States estimates Perez' Sentencing Guideline range upon conviction at trial will be approximately 135 to 168 months imprisonment. See 21 U.S.C. § 841(a)(1),(b)(1)(A)(viii). On the other hand, Perez appears to be safety-valve eligible, and he may be able to reduce his sentence. Nonetheless, this Court has previously noted that "[t]he rebuttable presumption in drug-trafficking cases is statutory, and arises out of Congress' concern that individuals involved in drug trafficking often have foreign contacts and the ability to leave the country, and incentives to remain active in the drug trade." United States v. Disher, 650 F. Supp. 2d 1131, 1136 (D.N.M. 2009)(Browning, J.)(citing United States v. Moreno, 30 F.3d 127, at *2 (1st Cir. 1994). This concern regarding drug-trafficking is further illuminated by its inclusion in 18 U.S.C. § 3142(g) as a factor for consideration in making a determination regarding detention. Perez has been charged in a large-scale cocaine conspiracy and faces a substantial sentence. Perez presents no new evidence or matters for consideration to alter the Court's analysis of the import of the nature and circumstances of the crime with which Perez is charged. The Court therefore continues to find that this factor counsels in favor of detaining Perez pending trial.

**B. THE WEIGHT OF THE UNITED STATES' EVIDENCE AGAINST PEREZ SHOWS HE IS A FLIGHT RISK.**

The weight of the United States' evidence against Perez favors detaining him before trial. "[T]he weight of the evidence offered in support of [the charge against Perez] is significant," giving him ample reason to flee if he is released pending trial. United States v. Cisneros, 328 F.3d at 618 (recognizing that the United States "need not offer all of its evidence" at the detention stage of the

criminal proceeding). The indictment against Perez and his co-conspirators is the result of a lengthy investigation, which included over four months of court-authorized Title III wiretap interception of six different telephones and video surveillance of three different residences.

Perez notes that his name appears only once in the nineteen-page Indictment, which he contends suggests that he had a much smaller role than his co-Defendants. Perez contends that he was a minimal participant in the alleged conspiracy, and that the Court should consider the United States' case against him. Smith testified at the December 8, 2010 hearing that Perez was a minor participant in the DEA's investigation. Although Perez may have been a minor participant in the conspiracy, the United States presents weighty evidence against him. Perez was repeatedly intercepted in conversations with Carrasco on her wiretapped telephone. On multiple occasions, Perez and Carrasco arranged for Perez to go to Carrasco's residence. Using video surveillance, agents observed multiple occurrences at Carrasco's residence when Perez would arrive and either exit his vehicle and walk to the front of the residence, or remain in his vehicle while Carrasco would walk to the window and reach into the vehicle. These meetings were brief, and Smith testified that the meetings are consistent with other hand-to-hand drug deals that the agent has witnessed in the past. Perez admitted to supplying marijuana to Carrasco in a post-Miranda statement at the time of his arrest. De La Torre, who lives with Carrasco, told investigators that Perez delivered marijuana and smaller amounts of cocaine to Carrasco. The proffered evidence demonstrates that the United States' case against Perez is formidable, making Perez' conviction and, in turn, his imprisonment a very real possibility for him. The Court thus finds that this factor weighs in favor of pretrial detention.

**C. PEREZ' HISTORY AND CHARACTERISTICS EVINCE THAT HE IS A FLIGHT RISK.**

Perez' history and characteristics continue to support finding that he is a flight risk. Some of his characteristics demonstrate ties to the community. Perez is a United States citizen. He has two children with his common-law wife, Lopez, and his children are United States citizens, although Perez did not live with them at the time of his arrest and any support Perez provided to his children were the proceeds of gambling in Mexico. His mother, Gardea, with whom he lives, resides in El Paso, and his brother resides in Santa Teresa. Perez contends that he played at most a minimal role in the matter and that his last conviction was for a misdemeanor in 2007. Perez also argues "that Defendant has *no profound ties* to Mexico," asserting that he traveled there only to gamble. Motion at 6. He notes that he owns no property in Mexico.

Perez, however, has not shown himself to be otherwise law abiding. Over the course of the past eleven years, Perez appears to have been arrested seven times, resulting in five convictions and one probation violation. The most recent conviction is for "failing to identify," which indicates Perez refused to cooperate with a law enforcement officer's request for identification. Perez has resolved his outstanding warrant for a traffic violation. Perez asserts that "not one of the charges to which he has pled pertain to violent offenses," and that, "[o]f his seven (7) arrests, the general underlying issue is drug or alcohol related impairment and petty criminal mischief." Motion at 5. He further asserts that, "[w]hile he did fail to appear at hearings on these misdemeanors, no comparison can be made from his conduct then, towards a proclivity to engage in interstate flight to avoid prosecution on the federal charge now." Motion at 5. While Perez' individual offenses may be minor, and some dated, they demonstrate a pattern and history of Perez' tendency to ignore the laws of his community and his inconsistent ability to follow lawful orders, including those

imposed by a court. While his prior offenses do not involve violent conduct, the Court has not found Perez to be a danger to the community, and the lack of violence does not convince the Court the he is less of a flight risk.

Perez concedes that he frequently travels to Mexico. According to information that the Border Patrol compiled, Perez has traveled to Mexico thirty-six times between May 23, 2010, and November 16, 2010. Perez initially told PTS, however, that he had not traveled to Mexico since 2009. Perez was arrested on the present charges upon reentering the United States from Mexico on November 16, 2010. The Court is troubled by Perez' failure to be forthcoming to PTS about the extent of his travel to Mexico. What is more, Perez also has family in Mexico. See United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003)(noting a defendant's "close family in Mexico . . . and that in the past [the defendant] has traveled to Juarez with a sister and other family members" weighed in favor of detention).

Perez does not rent or own his own residence, and lives with his mother. What legitimate income Perez has appears to derive from gambling in Mexico. Perez states that "[h]is source of income is admittedly unreliable and perceived as unethical, but it is lawful and he is attempting to transition to a more traditional and stable source of income." Motion at 5. The Court is not concerned whether Perez' gambling is ethical; the Court is concerned that Perez has a demonstrated ability to obtain income in Mexico, which supports the Court's conclusion that he would likely flee there.

Perez has cleared up his arrest warrant for his traffic violation. He has also apparently secured employment with Lowe's if he is released. The Court does not think these developments are enough to mitigate Perez' risk of flight if he is released. While there are some new wrinkles based on the new events, by and large, the Court finds Perez' circumstances present the same

concerns that led the Court to conclude no factors could adequately mitigate Perez' risk of flight when it denied him conditions of release in its MOO.

The Court continues to be concerned that Perez would flee and finds that the United States has shown by a preponderance of the evidence that Perez is a flight risk. His lack of candor and truthfulness about his crossings troubles the Court. The Court does not see many defendants that travel to Mexico as frequently as Perez does. If Perez had been forthcoming from the beginning, about his travel to Mexico, it might have painted a different picture for the Court. The Court does not doubt that Perez travels to Mexico to gamble, but the Court is concerned with Perez' comfort in traveling to Mexico, and his ability to obtain income there, particularly in light of his criminal history and his failure to comply with the conditions of his probation and court orders.

Thus, given the proximity to the border and the Court's belief that Perez is a flight risk, the Court does not believe at this time that it can construct a set of conditions that would mitigate to acceptable levels Perez risk of flight. The Court addressed using Perez' mother as a third party custodian in its MOO. While she had not yet been approved as a third party custodian, the Court noted that it was unconvinced of the viability of having her serve as a third party custodian, because Perez lived with his mother during the alleged events with which he is charge, and she has apparently not been willing or able to act as a check on him. PTS' approval of her as a third party custodian does not adequately weaken the Court's concern.[4]

In sum, by a preponderance of the evidence, Perez is a flight risk given the serious penalties he faces, his criminal record, the strength of the United States' case, and Perez' weak ties to the

---

[4] The Court's order is again without prejudice to Perez proposing conditions of release that better address the Court's and the United States' concerns, and give comfort to probation if the conditions can be met.

community and his ties to Mexico. On balance, Perez' ties to the community appear insufficient to prevent Perez' flight. In light of the severity of the sentence he is facing and the strength of the United States' evidence, along with his ties to Mexico, Perez has significant reason to abscond and avoid incarceration. The Court therefore denies his Motion, and affirms Judge Garza's order detaining him pending trial.

**D. THE COURT DOES NOT FIND CLEAR-AND-CONVINCING EVIDENCE THAT PEREZ IS A DANGER TO THE COMMUNITY.**

The parties present no new evidence or argument regarding its conclusion that the United States has not shown, by clear-and-convincing evidence, that Perez is a danger to the community. While the Court finds evidence that Perez is a danger to the community, the Court is not ready to say the evidence is clear-and-convincing. Because the United States has presented probable cause supporting Perez' federal charges, the statutory presumption that Perez poses a danger to the community is triggered. Even though Perez has met his burden of production in response to the presumption, the presumption remains a factor for this Court to consider in making its ultimate determination regarding detention. See United States v. Stricklin, 932 F.2d at 1355 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain."). Perez is charged with conspiring to traffic cocaine, which is a serious crime that "threatens to cause grave harm to society." Harmelin v. Michigan, 501 U.S. 957, 1002 (1991)(stating that the "possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare" of the United States). Thus, beyond the presumption, the federal charges provide reason to deem Perez a danger to the community. See United States v. Pina-Aboite, 97 F. App'x at 836 (recognizing that 18 U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk that a

defendant will continue to engage in drug trafficking constitutes a danger to the community" (citing United States v. Cook, 880 F.2d 1158, 1161 (10th Cir.1989)). Perez appears, however, to have played a smaller role than a number of his co-Defendants, and there is some evidence that he supplied Carrasco with marijuana and not with cocaine. At present, the Court is unconvinced that Perez was more than Carrasco's personal dealer and part of the broader conspiracy. While the United States presents weighty evidence that Perez distributed drugs in some fashion, it has not presented clear-and-convincing evidence that Perez was involved in the large-scale "drug trafficking [that] constitutes a danger to the community." United States v. Pina-Aboite, 97 F. App'x at 836 (citation omitted). Consequently, the Court does not find, on the record before it, clear-and-convincing evidence that Perez presents a danger to the community and relies instead on Perez being a flight risk in ordering his pretrial detention.

**IT IS ORDERED** that the Defendant's Second Notice of Appeal on the Order of Detention filed March 18, 2011 (Doc. 332), is granted in part and denied in part. The Court grants Defendant Jaime Perez' request for a hearing, and it affirms the order of the Honorable Carmen E. Garza, United States Magistrate Judge, denying Perez conditions of release.

James O. Browning

UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
United States Attorney
Albuquerque, New Mexico

-- and --

Sarah M. Davenport
Elizabeth M. Martinez
Assistant United States Attorneys
United States Attorney's Office
District of New Mexico
Las Cruces, New Mexico

*Attorneys for the Plaintiff*

Steven L. Almanza
The Law Office of Steven L. Almanza
Las Cruces, New Mexico

*Attorneys for the Defendant*